UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JAIME GORDON                                          CIVIL ACTION

VERSUS                                                NUMBER 04-466-JJB

WEST TELEMARKETING, ET AL

## OPINION AND ORDER

Plaintiff, Jaime Gordon ("Gordon"), brings this claim against West Telemarketing ("West"), alleging retaliation for reporting sexual harassment. A two-day bench trial was held in this matter. The Court is now ready to rule.

## FINDINGS OF FACT

1)  Plaintiff, Jamie Gordon ("Gordon"), began his employment with defendant, West Telemarketing," as a part-time telemarketing representative.
2)  Ron Ward ("Ward") was employed at West as assistant to the Director of Site Operations, during the relevant time period.
3)  Cathy Magbee ("Magbee") was employed at West as the Director of Site Operations, during the relevant time period.
4)  Nakia Chilton ("Chilton") was employed at West as a supervisor, during the relevant time period.
5)  While at West, Ward asked Gordon as well as other telemarketing representatives to perform special tasks, such as checking headsets for the telemarketing representatives to insure they were working properly, decorating for holidays and other special occasions, and assisting with restocking of supplies.
6)  In September, 2002, Gordon became a Podium Section Leader ("PSL") and was assigned to work on the podium, an area where attendance control coordinators and supervisors stood to monitor the floor and handle issues related to telemarketing representatives.
7)  As a PSL, Gordon answered the telephone, assisted the podium supervisors, kept a record of telemarketing representatives' tardiness, absences, terminations and reinstatement, and ran attendance reports as directed.

1

8) In December, 2002, Gordon filed a complaint of sexual harassment against Ward.
9) Thereafter, Chilton held a meeting with Gordon and Ward to discuss the complaint.
10) All alleged inappropriate behavior by Ward toward Gordon stopped after this meeting with Chilton.
11) Ward continued to use Gordon on special projects and Gordon continued to do these special projections without objection.
12) West had a policy that in order to switch shifts, employees had to post any request to change their shift in the computer system or to obtain prior permission from a supervisor.
13) On March 3, 2003, Gordon switched shifts with a co-worker, but did not post the shift change in the computer or obtain prior permission from a supervisor.
14) On March 3, 2003, Ward requested that Gordon check some headsets, but Gordon indicated that he was leaving at 1:00 p.m., which was before the end of normal shift, as result of the shift change.
15) Ward informed Magbee that Gordon would not assist with the headsets.
16) On March 8, 2003, Bill Jones, Operations Manager, issued Gordon a Performance Improvement Notice (PIN) for working unscheduled work hours.
17) On March 9, 2003, Gordon sent an e-mail to Michel Hambrick ("Hambrick"), the Regional Employee Relations and Training Manager at the relevant time, alleging that Ward was retaliating against him for Gordon's reporting sexual harassment.
18) Hambrick had a meeting with Gordon on March 13, 2003. During the meeting, Gordon informed Hambrick that Ward had not engaged in any inappropriate touching or made any sexual comments after his December, 2002 meeting with Chilton and Ward.
19) While investigating Gordon's claim, Hambrick learned through an email from Magbee that Gordon had been under investigation for fraudulent behavior for several weeks.
20) Two former employees, Melissa Hawkins and Dominique Dupre, accused Gordon of knowingly accepting false doctor excuses, in order to inappropriately remove an occurrence on their employee attendance record.
21) Gordon was suspended on March 14, 2003, pending the outcome of the investigation.
22) Following the investigation, Hambrick and Jones decided to remove the attendance coordinator duties from Gordon and limited his duties to telephone representative. Hambrick and Jones decided against terminating his employment or reducing his salary.

23) Gordon agreed to return to work on April 1, 2003. However, after using personal time, Gordon never returned to work at West.

## DISCUSSION

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin."[3] Section 2000e-3(a) of the Act -- its anti-retaliation provision -- forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.

To establish a prima facie case of Title VII retaliation, a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) his employer took an adverse-employment action against him; and (3) a causal connection exists between the protected activity and the adverse-employment action.[4] Once the prima facie case is established, the burden of producing some nondiscriminatory reason for the adverse-employment action falls upon the defendant.[5] The plaintiff then assumes the burden of showing that the reasons given for the adverse-employment action were a pretext for retaliation.[6]

### A. Engaged in Protected Activity

---

[3] 42 U.S.C. § 2000e-2(a).

[4] **Despres v. City of San Antonio**, 211 Fed. Appx. 283, 285 (5th Cir. 2006) (citations omitted).

[5] See **EEOC v. J.M. Huber Corp**., 927 F.2d 1322, 1326 (5th Cir. 1991).

[6] **Id.**

The evidence shows that Gordon engaged in protected activity when Gordon sent an e-mail complaining of sexual harassment by Ward as well as when Gordon filed two EEOC complaints, alleging sexual harassment and retaliation on November 5, 2003 and December 18, 2003. Thus, Gordon satisfied the first prong of the test for a retaliation claim.

**B. Adverse Employment Action**

After Gordon proves that he has engaged in activity protected by Title VII, he must then show that his employer took an adverse-employment action against him. The Supreme Court clarified the "adverse-employment action" prong of the retaliation test in **Burlington Northern & Santa Fe Railway Co. v. White**.[8] In doing so, the Court rejected the approach taken by several circuits, including this one, that required plaintiffs to demonstrate an "ultimate employment decision" to satisfy the adverse employment action element of a retaliation claim.[9] Instead, the Court explained that the test for an adverse-employment action is whether "a reasonable employee would have found the challenged action materially adverse, [meaning] . . . it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[10] Therefore, under the current state of law, Gordon need not show that any adverse employment actions were ultimate employment decisions.

---

[8] 548 U.S. 53 (2006).

[9] **Id.** at 67 (citations omitted).

[10] **Id.** at 68 (internal citations and quotations omitted).

At trial, Gordon testified that he received a Performance Improvement Notice ("PIN") for working unscheduled work hours. Gordon testified that he was demoted by Hambrick and Jones in March, 2003 when they removed his job responsibilities as attendance coordinator. Gordon testified that he felt the demotion and PIN were issues in retaliation for his reporting sexual harassment.

In reviewing the evidence, the Court finds that Gordon has meet his burden of proving an adverse employment action for his retaliation claim. Certainly, the removal of Gordon's job responsibilities (a demotion) would dissuade a reasonable employee from making a charge of discrimination.

**C.    Causation**

Finally, to establish a prima facie cause of retaliation, Gordon must show that causation exists between the adverse employment action and the protected activity. The causal link need not rise to the level of "but for" causation at the prima facie stage.[11] Instead, "in order to establish the causal link between the protected conduct and the illegal employment action, the evidence must show that the employer's decision . . . was based in part on knowledge of the employee's protected activity."[12] As such, Gordon must show only that the protected activity was among the factors motivating the adverse employment action, not that it was the sole motivating factor. A prima facie case may also be supported by a showing that the person who ultimately decided on the adverse

---

[11] **Gee v. Principi**, 289 F.3d 342, 345 (5th Cir. 2002).

[12] **Sherrod v. Am. Airlines, Inc.**, 132 F.3d 1112, 1122 (5th Cir. 1998).

employment action was improperly influenced by the person against whom a retaliatory motive was alleged.[13]

In the instant case, Gordon has not shown that his demotion, and subsequent decision not to return to work at West, was in any way related to or caused by his complaints regarding Ward's behavior. Therefore, the Court finds that the causation element of Gordon's retaliation claim fails.

Hambrick testified that she did not believe that Gordon was being retaliated against because Gordon admitted to knowingly accepting fraudulent doctors' excuses. Hambrick testified that company policy prohibits the practice of accepting false documents, and that discovery of such practice by any employee is grounds for termination. Hambrick testified that she and Bill Jones made the decision to reassign Gordon back to a telephone representative instead of terminating him. Hambrick testified that she and Jones decided not to terminate Gordon because Gordon presented text messages which called into question the reason why Dupre and Hawkins reported Gordon's acceptance of the false doctors' excuse. According to Hawkins' deposition testimony, Dupre wanted to get Gordon terminated if Dupre could save her job by reporting Gordon. Hambrick noted that they decided to remove the attendance coordinator duties because of mistrust issues. Hambrick testified that Ward and Magbee were not involved in the decision to remove Gordon's job responsibilities. Hambrick also

---

[13] **Gee**, 289 F.3d at 346.

indicated that Magbee and Ward did not participate in her investigation of the incident.

With regard to improper switching shifts, Hambrick testified that based on her investigation, she did not feel that Gordon was being retaliated against when he received a PIN for switching shifts. Hambrick testified that Gordon admitted to switching shifts without following the proper procedure. Jones testified that he issued the PIN, and the PIN was going to be removed from Gordon's file in one month. Jones testified that Magbee did not direct him to issue the PIN.

No evidence was presented showing that either Magbee or Ward was involved in any of the employment actions taken against Gordon. Gordon testified to his subjective belief that Ward and Magbee were involved in the employment decisions. However, Gordon's subjective belief alone is insufficient to meet his burden of proving causation. Gordon also presented some testimony of possible involvement of Magbee and Ward with the obtaining of the statements from Dupre and Hawkins and being involved in the incident that resulted in Gordon's PIN. The court does not find any of this evidence sufficient to establish causation in this matter. Gordon does not show that either Magbee or Ward were involved in the employment decisions or had influence over the decisionmakers.

For the reasons stated above, Gordon has not demonstrated that he was subjected to a materially adverse employment action caused in part by engaging in a protected activity. Thus, Gordon's retaliation claim fails.

**IT IS HEREBY ORDERED** that Judgment will be entered in favor of the Defendant, West Telemarketing.

Signed in Baton Rouge, Louisiana, on February 14, 2012.

                                                              **JAMES J. BRADY, DISTRICT JUDGE**
                                                              **MIDDLE DISTRICT OF LOUISIANA**